MOBILE SAVINGS BANK *et al. v.* MURDOCK & PARCHMAN.

**Assignment for Creditors — Void on its Face.**

> Where an assignment for creditors is attacked, in a bill in chancery, as being void in general terms and particular grounds are also assigned, and the assignment is made an exhibit to the bill and it is incurably void on its face, it will be declared void although the bill does not attack it on the particular ground on which it is vulnerable.[1]

**Same — When Void.**

> A general assignment for the benefit of creditors, with preferences, which provided that the assignee shall close up the trust within nine months from the time the assignment is made, " or earlier as may be agreed upon by a majority of the preferred creditor " is void.

In April, 1881, Murdock & Parchman, merchants, doing business in Okolona, in Chickasaw county, were heavily in debt. They conveyed some property to individuals in payment of alleged debts, and on April 4, 1881, the firm made a general assignment of their property to D. P. Black, assignee, for the benefit of their

---

[1]
An exhibit being part of the bill no characterization of it by the pleader can alter its essential nature. Hence, when it is contradicted by an averment of the bill, the fact will be taken to be in comformity with the exhibit. Heuse *v.* Gumble, 78 Miss. 259, 29 So. 71; McNeill *v.* Lee, 79 Miss. 455, 30 So. 821.

In an assignment for creditors, the assignee takes the property impressed with all the limitations expressed in the deed. It is the measure of his power. Both he and the creditors must abide by its terms, and no court has the power to relieve him from compliance therewith, or to substitute its judgment for that of the assignor. The assignor is not only prohibited from providing for a benefit to himself, but he may not impress his will on the future management of the trust estate to the injury of creditors. Whatever provisions in the deed lead to the deprivation of the right to appropriate the property to their demands are unauthorized, and make the instrument void. Richardson *v.* Stapleton, 60 Miss. 97.

The assignment as written is the law for the administration of the insolvent's estate. Neither the assignee nor the courts may add to or substract therefrom, and as written it must be susceptible of complete execution without depriving creditors of their legal rights, or it may not stand against their attack. Richardson *v.* Stapleton, 60 Miss. 97; Marks *v.* Bradley, 69 Miss. 1, 10 So. 922; Selleck *v.* Pollock, 69 Miss. 870, 13 So. 248; Hiller *v.* Ellis, 72 Miss. 701, 18 So. 95.

creditors. On the same day each of the partners made assignments to Black of their individual property for the benefit of the firm creditors and by the terms of these individual assignments the assignee was to hold this property upon the same trusts, terms, and conditions as he held the partnership property. The assignments provided for the payment of certain creditors in full before others were paid anything. The assignment, after directing the assignee to take possession, sell, collect, and convert into money with all due diligence the assets assigned, contains this provision: "Provided the said party of the second part (the assignee) shall close up this trust by the 1st of ———, 1881, or earlier, as may be agreed upon by a majority of the preferred creditors hereinafter named, and to that end may, at any time, by advertising the time and place, in any newspaper, published in the city of Oka- lona, for two consecutive issues, and by posting the same upon the door of the post-office and courthouse in said city and the door of the storehouse in which the goods are situated, for two weeks, sell at public outcry to the highest and best bidder for cash all and singular the property herein conveyed, including the notes, accounts, and choses in action uncollected and the real estate conveyed by this assignment and that conveyed by the individual assignments." Appellants, unpreferred creditors of Murdock & Parchman, filed the bill in this case in the Chancery Court of Chickasaw county against them, and those to whom conveyances had been made before the assignment was made, to vacate the assignment alleging it was made to hinder, delay, and defraud creditors in collection of their debts and was fraudulent setting up several reasons therefor.

The assignments were all made exhibits to the bill as were the several deeds made by Murdock & Parchman to other defendants. The defendants each answered denying that the assignments were fraudulent and void.

The cause was submitted for final decree upon the bill, answers, and exhibits, no proof having been taken. The court, after hearing the cause, dismissed complainants' bill and from that decree they appeal.

APPEALED from Chancery Court, Chickasaw county, second district, L. HAUGHTON, Chancellor.

Reversed in part and affirmed in part.

*Attorneys for appellant, Richard P. DeShon and W. T. Houston.*

*Attorneys for appellees, McIntosh & Williams, Houston & Reynolds.*

Brief of Richard P. DeShon:

\* \* \* All of said assignments were made at the same time, formed but *one* transaction, and were ostensibly made for the benefit of the creditors of the firm of Murdock & Parchman, as it is admitted by the answers of the appellees, Murdock, Parchman and Black. Said assignments to Black are with preferences, and direct that certain creditors shall be paid in full before any payment to the other creditors of the firm. \* \* \*

It is insisted by appellants that these provisions require Black, the assignee, to *close up his trust* within the year of 1881, and must do so even earlier if directed by a *majority* of the preferred creditors, and that to do so, he shall sell at public outcry the notes, accounts, and choses in action then in his hands uncollected. From April 4, 1881, the date of the assignment, to the end of the year 1881, is not quite nine months — not enough time to enable the assignee to collect in any usual, ordinary, proper, or legal manner the debts, notes, and open accounts, or to foreclose and realize on the mortgages and other securities for such debts. It is a great wrong, hardship, and fraud on the unpreferred creditors to sell out these things "at public auction for cash," and so sacrifice them, before sufficient opportunity has been given to reduce them to money in the usual and proper way. The power conferred upon the majority of the preferred creditors to close up his trust and sell at auction the debts and accounts, even "*earlier,*" so that they may be paid in full sooner, at the sacrifice of the other creditors, is an undue and improper preference.

"Assignments with preferences, *per se,* should be judged as favorably by the principles of law as assignments which are *pro rata,*" 59 Miss. 80, applies only to such preferences as are proper; that is, preferences for priority of payment out of the assets in the hands of the assignee. \* \* \*

This court has held in the late case of Richardson & May *v.* Stapleton & Bro., where no undue preference was given, that a

provision in the deed of assignment, requiring the assignee to sell off the uncollected debts and choses in action in his hands, within eight months from the date of the assignment, tended to delay, hinder, and defraud the creditors, as that period was too short, within which to make that class of assets yield what they would do if collected and reduced to money in the usual and proper manner, and that the assignment was void as to the creditors.

In the case now before the court, not only is the assignee required to close up his trust and to sell at public outcry all the choses in action not collected in his hands, within nine months, but the *preferred creditors,* through a *majority,* can compel him to do so *earlier.* The power and dominion is given to the preferred creditors to squeeze at once a payment of their debts, and the unpreferred creditors are not even permitted to have a fair administration and collection of that part of the assets, out of which they might hope to receive a few crumbs.

That the intention of the parties was to fix the 1st day of December, 1881, as the date for the assignee to have entirely closed his whole trust under the assignment, is shown by the answer of R. A. Murdock and the answer of G. W. Parchman, as well as by the individual assignments of R. A. Murdock and G. W. Parchman, where that day is fixed. Murdock's counsel insisted in his answer, under the oath of Murdock, that all of said deeds of assignment were to be construed together as one transaction and instrument, and also insisted that in no way can the deed of the firm to Black be construed except that the assignee was to close up his trust entirely within the year 1881. With this construction we are content. ＊ ＊ ＊

All written instruments are to be construed by the court to effectuate the intentions of the parties as *expressed.* The deed of the firm reads, " on first of ————, 1881," and is dated April 4, 1881. It is absurd to say it means the first of 1881, for that is before the deed was made, and it is evident from the blank that only the month was left out. We do not ask the court to insert any month, but only to take the deed as it is, with the blank in it, and say whether it is not evident from the deed itself that the assignee was to close up his trust within the year 1881; at some time within that year. ＊ ＊ ＊

Could not the deed be reformed on the evidence in this record by the creditors so as to insert the month and require the assignee

to close up his trust within the time? And would not the court, on that evidence, construe the deed as it now stands, so that such reformation would only be permitted so far as to insert a month within the year 1881? Is not that a construction of the deed, as it now stands, that it requires such action by the assignee within that year? And the deed is certain as to the year, and if the assignee takes up to the last day of the year, still there is not a reasonable time for the proper administration of the assets and choses in action in his hands. * * *

Nearly every written instrument requires construction by the court. Where a note was dated in May, 1837, and promised to pay a sum of money on "first of January, one thousand forty," the court by intendment held the note to be payable on first of January one thousand eight hundred and forty, although the words eight hundred have been omitted. Evans' Admr. *v.* Steel, 2 Ala. 114. * * *

It is apparent in their deeds that they did give to the preferred creditors an unfair and undue preference, a dominion and power over the assets and the assignee, that enabled them to force an immediate payment of their claims by the sacrifice of the other creditors.

We say that either of these provisions are contrary not only to the spirit but to the expressed and written letter of the law, and are fatal to said assignments.

It is contended by the counsel for appellees, that even if the assignments are void as to the real estate and choses in action, that as to the goods and chattels there was an actual delivery to the assignee; and that such *delivery* by *itself* worked a good and valid assignment, and vested in the assignee a perfect title to the goods and chattels, as against all the world. To sustain this position they cite the case of Baldwin *v.* Flash in 58 Miss. 593, and 59 Miss. 61. The case now presented and that case are in no wise similar. * * *

To pass title the delivery must be accompanied with a lawful intention to do so. A delivery of possession with an unlawful or fraudulent intent will not pass title as against his creditors, and the transaction is void as to *them,* no matter what it is between the *parties.* A man cannot turn over absolute possession of his chattels to another with intent to hinder, delay, and defraud his creditors and then be heard to say the delivery carried title as

against his creditors. The intent may be implied from acts and circumstances, may be expressed in any way, by words spoken, by writing on paper in ink, or in chalk, or on the barn door; but the higher and more deliberate the form used, the higher is its value as evidence of that intention. * * *

In the present case there is a fraudulent intent to hinder and delay creditors pervading the entire transaction. The only expression of intent in the delivery to Black by Murdock and Parchman of their goods is to be found in their deeds of assignment, where is stated the whole intent and purpose of the transaction. Black was to hold the goods ostensibly for the benefit of the creditors of the firm as and in the same way he held the real estate and choses in action. The whole assignment and delivery was made at one time, was done for the same purpose and intent as to all the property assigned, and in the eye of the law was all done to hinder, delay, and defraud the unpreferred creditors by its terms, and to give an undue and unfair preference to the preferred creditors. And it is so admitted in the answers of Murdock and of Parchman. Burrill on Assignments, § 353.

Besides a mortgage of chattels, or deed of trust as security for a debt, as is the case of a general assignment for benefit of creditors, by the statute of Mississippi (Code 1880, §§ 1210, 1212), must be recorded, and consequently must be in writing, so as to be recorded and until recorded, is inoperative against creditors. The recorded deeds of assignment in this case embrace real estate, choses in action, and chattels, and are in law but one instrument and that instrument is void on its face as against appellants. * * *

Brief of W. T. Houston:

* * * The exhibits were made part of the bill and are to be considered as though set out in *haec verba*, and they are charged to have been fraudulent. Code 1880, § 1869.

That is, the facts are set out in full and fraud is charged.

The answers admit that assignments were to be closed out by sale, etc., within the year 1881, or in less than nine months from the date of the assignment, by at least four days, but it has been argued in the court below that under the pleadings we cannot avail ourselves of this because the bill avers that no time was fixed within which the assignee should pay over the proceeds of

the property to creditors, which appellees construe to mean that no time was fixed for the assignee to sell the property.

We submit that this is not a legitimate construction of the allegation that fixing too early a date to sell avoids the assignment and we think fixing no time by which the assignee was to settle thereafter was another ground of objection.   We think that by making the assignments part of the bill, we allege that it is void for requiring the sale to be made in an unreasonably short time and then charge further that it was also void because no time was fixed for him to pay over.   The answers negative the idea that title to the personalty could have passed by the delivery by alleging that at the time of delivery the assignee was instructed to sell out the property during 1881, and he consented to this condition and accepted the possession under this condition, so that the contract evidenced by the delivery was itself as invalid as the written assignments.   60 Miss. 97; Jerre Seale v. Watkins & Gilliland, 4174, 4175, Opinion Book K, page 595.   *   *   *

None of the answers deny the allegations of the bill as to the conveyances being made nor the kinship of the grantors and grantees therein, nor the insolvency of the grantors, but plead payment of a valuable consideration which is an affirmative matter which they must sustain by proof.   Complaints by establishing insolvency of the grantors, relationship such as is shown, conveying all property away, make a case that devolves on the defendant the burden of showing a valuable consideration by testimony.   Nor can this rule ever work injustice, because if there was a valuable consideration the evidence of it is always in the possession of the grantor and grantee, while it is difficult, even where no consideration was paid, for complainant to prove this negative.   1 Battle's Dig., N. C. Rep. 631, pl. 81; Busb. N. C. L. Rep. 105, 106, 108, 109; 2 J. J. Marshall's Rep. 215; 5 Ohio, 122; Lloyd v. Williams, 21 Pa. St. 331; 4 Jones Law (N. C.) 154; 34 Miss. 585.

The case in 58 Miss. 399, Salmon v. Smith, was perhaps against this view, but the point seems to have been assumed and conceded by counsel, and, therefore, perhaps was not critically considered by the court.

In that case, however, the insolvency of the grantor *at the date* of conveyance was not shown, and so the rule to invoke did not apply for to throw the onus of proving a consideration on the

grantor, relationship and insolvency at the date of the convey-
ance must be shown. This we have done in the case at bar by
the allegations of our bill and the admissions in the answers.
The case in 58 Miss., does not refer to that in 34 Miss. 585.

. The power to sell on a credit vitiated it. 2 N. Y. Rep. (Com-
stock), 371; 6 N. Y. Rep. (Selden), 518 et seq.; 34 Miss. 585,
586.

. The commissions allowed assignee under it void, no proof of
their reasonableness being adduced. 2 N. Y. (Comstock) 372.

Assignee's insolvency avoided assignment. Burrill on Assign-
ments, p. 119, § 93.

If void in part, void in toto. Second Ed. Bump Fraud., Conn.,
p. 356. * * *

The reservation to a majority of the preferred creditors to fix
a day for the sale of the property was making them the assignor's
agents to that extent, and for that purpose, and might equally
have been reserved to the assignors. The power given to all the
creditors to fix the date of sale or to a majority of all might
have been good, though I doubt the latter, as it would be per-
mitting a debtor to subject the minority to the tyranny of num-
bers. * * *

This majority could have had the entire property sold within
three weeks of date of the assignment and thereby given them-
selves an opportunity for a grand speculation at the expense of
the others. The majority which was entrusted with this power
was a majority of the preferred creditors only, who were them-
selves a minority of the whole. A part of the property assigned
consisted of choses in action, a list of which is made an exhibit
and shows that about fourteen of the claims exceeded the juris-
diction of a justice of the peace, and aggregated (exclusive of
those which did not) the sum of about $4,000.

Brief of McIntosh & Williams:

The gravamen of the whole bill is, *fraud*, not fraud in law,.
but *fraud in fact*. The bill charges that the deed of assignment
was made for the fraudulent purpose of defeating the creditors of
the assignors, etc.; that each and every one of the conveyances
made by both R. A. Murdock and G. W. Parchman, and the
firm of Murdock & Parchman, was without consideration and made
in fraud of the rights of complainants. The answers of each

of the grantees, as well as those of the grantors and Black, the assignee, emphatically and unequivocally deny the fraud charged, and aver a valuable consideration, and show the *bona fides* of each and every transaction, not only of the deeds of assignment, but of every conveyance made either by the firm or either member of it. Without proof the cause was set down for hearing by the complainant below upon bill, answer, and exhibits. If the court had not dismissed the bill on the state of pleadings, it would have reversed the rulings of every court upon that state of pleadings since the beginning of chancery practice. \* \* \*

Brief of Houston & Reynolds:

\* \* \* This assignment is attacked because it requires the assignee to close the trust by the 1st of December, 1881, or during the year 1881, and the decision of this court in Richardson & May *v.* Stapleton, 60 Miss., is invoked to sustain it.

The bill does not assail the assignment on this ground, but on very different and almost opposite ground. It is assailed in the bill because no time is fixed in the assignment in which the assignee is to account to the creditors. The court will search in vain for any objection of this kind that was made in the brief of counsel for appellants to this assignment. If the court should hold that the deed is void on its face because of the provision which we have copied, appellants could not have any relief on that ground, because that is not the case as made by the bill. The bill presents a different case. It is useless for us to argue the legal proposition which is thus presented; it is too well settled for any difference about it. A complainant must recover on the case made by his bill, and if he is shown by the answer or by the testimony to be entitled to relief, but on grounds different from those made in the bill, it must be dismissed. This point is not presented in this court for the first time. It was made in the court below, and appellants, if they had requested, might have obtained leave to amend, and then presented a case which, if the deed is void for the reason indicated, might have entitled them to relief. If the bill had made the case that the deed was void because it empowered the assignee to sell the choses in action and to close the trust by the 1st of December, 1881, the defendants might have answered that this was best, and established that the claims were of such a character that they could

not be recovered by suit, and the only disposition which could be profitably made of them was by sale. No opportunity was afforded to make any such defense or present any such proof.

The assignment was executed in April, 1881. The provision is that the assignee shall close up this trust by the first of      , 1881, or earlier, as may be agreed upon by a majority of the creditors, and to this end, *may* sell the property, including the uncollected notes and accounts. The rule of construction is that such a construction shall be given to an instrument as will make it valid, rather than one which will avoid it. The courts lean to that construction which will give validity to the instru·· ment.   *   *   *

The provision to close the trust by the first of      , 1881, does not mean that the trustees' power shall then cease. It means, not an ending of the powers of the trustee, but a closing out by sale of all the property, leaving it discretionary with him whether by this period he will sell the uncollected notes, etc. The assignee is required with as little delay as possible to collect and recover the notes. Effect must be given to this privision,— collect with as little delay as possible,— but if on the first of      , 1881, he shall deem it best, he may sell at the time he is required to close out (sell) the balance of the property.

But the proviso that the trust shall be closed by the first of      , 1881, is meaningless, taken in connection with the date of this assignment. An assignment executed in April, 1881, cannot be closed by the first of 1881. This is impossible, and impossible provisions will not avoid an instrument.   *   *   *

The case of Richardson *v.* Stapleton, 60 Miss. 97, is not analogous to the one now before the court. There, the deed was declared void on its face because it provided that the assignee *shall* within nine months sell the uncollected claims. The sale within the time was imperative, and stress is laid upon this in the opinion of the court. Here a sale is discretionary, *may sell.* Even then if counsel in their interpretation of the assignment, that it must be closed by the 1st of December, 1881, or by the close of the year 1881, inasmuch as it leaves the sale of the uncollected claims to the discretion of the assignee, the assignment is not void.

The invalidity of the assignment because of the provisions indicated are the only points made by counsel.

OPINION.— CAMPBELL, C. J., delivered the opinion of the court.

We think the assignment made by Murdock & Parchman is void, and while it is true that the bill does not attack the assignment on the particular ground on which we consider it vulnerable, it makes it a part of the bill, and alleges that it is void, and being incurably void as we regard it, it should be so held.

We recognize the rule that a party is not entitled to make one case by his bill, and a different one by his proof, but in this case the rule will not be violated by holding the assignment void because of the provision for a sale of choses in action, and the requirement that the trust be closed in 1881, which is our interpretation of the instrument.

Decree reversed so far as to declare the assignment void, and in all else it is affirmed.